# McAdory, Admr. v. Louisville & Nashville Railroad Co.

*Action by Administrator to recover Damages for Death of Intestate by Wrongful Act.*

1. *Contributory negligence.*—Where, in an action by an administrator to recover damages for the death of his intestate, alleged to have been caused by the negligence of the defendant railroad company, it appeared that said intestate came to his death by falling, in the night-

[McAdory, Admr. v. Louisville & Nashville Railroad Co.]

time, into an excavation made by the defendant across a travelled way, not a public highway, which defendant had negligently left unguarded; but that the intestate knew of the location of the excavation, and that defendant had left it unguarded, and without lights or signals of warning, and he could have avoided the disastrous result by the exercise of reasonable care and diligence,—the plaintiff was not entitled to recover, because of the contributory negligence of his intestate.

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. JAMES J. BANKS.

J. M. MARTIN, J. T. ALLEN, and C. P. JONES, for appellant.

HEWITT, WALKER & PORTER, contra.

McCLELLAN, J.—This action sounds in damages for personal injuries resulting in the death of plaintiff's intestate. The complaint alleges that the defendant, the Louisville & Nashville Railroad Company, made or caused to be made, &c., a deep or wide cut or excavation across a "regular roadway" which led from Birmingham and South Highlands, across Red Mountain, to the village of Clifton, on the opposite side of said mountain; that intestate, having no knowledge of this cut, proceeded along said roadway at night, and was killed by falling into this abyss. It is not averred that the act of the defendant in making this excavation was without authority of law or wrongful in any respect, but the wrong and negligence counted on for a recovery is laid in the fact that the defendant left said cut or excavation "open, without guard, signal or barrier of any kind whatever which would warn the public or persons who passed over said roadway of the impending danger." The averment as to intestate's knowledge is "that the said decedent knew nothing of said cut or excavation across said roadway, * * * but walked into the same in passing home from his work at night." The averment in the first count as to defendant's negligence and its damnifying results is this: "That defendant was guilty of gross negligence in making said cut or excavation across said roadway, and leaving the same without guards or signal to warn the public and said decedent

[McAdory, Admr. v. Louisville & Nashville Railroad Co.]

of the danger, and that, owing to said want of care and diligence, and the wrong of the defendant in thus constructing or making said cut or excavation and leaving the same open and unguarded, or causing the same to be done, the said decedent fell into it and was killed." And in the second count this is averred : Plaintiff claims damages, &c., &c., "for that the defendant did dig or cause to be dug a cut or excavation across said roadway, the said cut being, to-wit, 15 feet wide and 30 feet deep, and did permit the same to remain open and unguarded for a week or more, and until plaintiff's decedent * * * while walking along said roadway * * * fell into said cut or excavation, and was killed." Both counts contain the averment of intestate's want of knowledge of the existence of the excavation.

The evidence showed that this roadway was not a public thoroughfare, but a bridle and foot path (over which, however, some of the witnesses had known wagons to pass), which had been used for a great number of years by people in considerable numbers passing between Birmingham and Clifton, being a considerably shorter route than the public road between these points. It was also shown that the excavation referred to in the complaint had been cut across and some distance beyond the road a week or two before intestate's death, and that persons passing that way went out of the old road and around the end of the cut, thus tramping out a new pathway. This excavation was not guarded at any point, nor were there any barriers to prevent people walking into it, nor lights or other signals to mark its position. The evidence, without conflict, shows further, however, that Hix, the intestate, had passed along there after the cut had been made, and that as he and his companions approached it on the occasion of his death and when they were within forty or fifty feet of the point where it crossed the road, they stopped to rest, sat down, "and talked about it, its depth and the time it would take to finish it." Then proceeding to the cut, they turned out of the old road to pass around it and while going around the end of it, ten or fifteen feet from the old road, Hix, walked or fell into the cut. This was about 10 o'clock on a star-lit night.

It is manifest that there are on this state of averment and proof two variances between the complaint and the

evidence. In the first place, the complaint alleges that Hix walked into the pit while proceeding along the old roadway across which the excavation had been made, while the proof is that he was ten or fifteen feet out and to the right of the roadway when he walked or fell into the pit. And if it can be said that he was in the new path, this could not help the matter, because the cut had not been extended across that, and the only road mentioned in the complaint was one which had been cut in twain by the excavation. Again, the complaint asserts that Hix did not know of the existence of said cut; but the uncontroverted evidence is that he had passed along that way several times after the excavation had been made, that, as he approached on the night of his death, he and his companions talked about it, its depth and the time it would require to complete it, and that at the very moment of the catastrophe he was making an effort to pass around the end of the cut, and had gone out of the road because of it. We might possibly rest our approval of the giving of the affirmative charge for the defendant on these variances.

But a safer basis for this conclusion is found in the evidence going to show contributory negligence on plaintiff's intestate. As we have seen, the decedent, Hix, had full knowledge of the location, depth, &c., of the excavation. We may concede that, although the defendant committed no wrong in making the excavation, it was, under the circumstances, negligent in leaving it unguarded at night by barriers, or lights or other signals to warn persons of its precise position. But, nothwithstanding this negligence on the part of the defendant, a recovery should not be had in this case if Hix by the exercise of reasonable care and diligence could have avoided the disastrous result, because in such case the result is chargeable in part to the negligence of both parties, and the law affords no redress where the injury is of such a dual causation. Knowing the location of the pit and also knowing the defendant had left it unguarded and without lights or signals of warning, the duty was upon Hix to protect himself against the consequences of this negligence on the part of the defendant. If there was light enough for him to see and mark the lines of the excavation so as to avoid it, he must have negligently—inadvertently—omitted to use

his eyes, else he would not have walked into the pit. If, on the other hand, the night was too dark for the abyss to be seen, Hix, knowing its location, but unable to mark its precise boundary because of the darkness, was, in our opinion, negligent in attempting to pass in such dangerous proximity to it. Again, being a star-lit night, Hix could have experienced no difficulty in seeing and following in the footsteps of one of his companions, who was just ahead of him when he fell into the pit, and had he done so all would have been well. Knowing the proximity and danger of the pit, Hix's failure to avail himself of this sure and self-suggesting means of safety must have been due to thoughtlessness forgetfulness, inadvertence, negligence.. He did not exercise that measure of care which the law required of him under the circumstances; and his failure in that regard combined with defendant's negligence to produce the result complained of. The negligence of the plaintiff's intestate and the defendant thus each contributing to the result, there can be no recovery; and the affirmative charge was properly given for the defendant.

Affirmed.